## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

### CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

        **Plaintiff,**

v.

RANDALL JAMES,

        **Defendant.**

_____/

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges:

### I. INTRODUCTION

1.      From no later than October 2012 until at least July 2014, Randall James defrauded investors he solicited to purchase securities in the form of an investment contract relating to his company, Global Maximus Productions, LLC ("GMP"), which purportedly produced live entertainment for online pay-per-view and television.

2.      To lure investors, James knowingly or recklessly materially misrepresented how he would use investor funds. Specifically, James told investors he would use investor funds to produce live-streamed entertainment and concerts. Instead, he misappropriated investor funds for his own personal use, including payments for personal meals and housing, and to pay his ex-wife.

3.      From no later than October 2012 to at least July 2014, James raised at least $109,900 from at least four investors.

4.      Through his conduct, James violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a), 77e(c), and 77q(a); and Section

10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

## II. DEFENDANT AND RELATED ENTITY

### A.      Defendant

5.      **James**, 48, resides in Nashville, Tennessee.  He was the owner and controlling principal of GMP.   James is not registered with the Commission in any capacity.

### B.      Related Entity

6.      **GMP** was a privately-held limited liability company James formed in Nevada with offices in Nashville, Tennessee.  On January 31, 2015, the state of Nevada revoked GMP's operating status.  GMP was purportedly in the business of producing live shows and concerts for online pay-per-view and television.   GMP never registered any securities offering with the Commission.

## III. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

8.      The Court has personal jurisdiction over James and venue is proper in the Middle District of Tennessee because many of the acts and transactions constituting the violations alleged in this complaint occurred in the Middle District of Tennessee.  Additionally, James resides in the Middle District of Tennessee.

9.      In connection with the conduct alleged in the complaint, James, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce or the mails.

## IV.  THE FRAUDULENT SCHEME

### A.    The Offering

10.     From no later than October 2012 until at least July 2014, James, through GMP, engaged in a securities offering seeking to raise $1.5 million from the investing public.

11.     James offered investors interests in the assets of his company GMP, which was purportedly in the business of producing live shows and concerts for online pay-per-view and television.

12.     In exchange for their investments, James promised investors revenues derived from the anticipated royalties from GMP's products, including live streaming video entertainment, concerts, and reality television shows.

13.     James, on behalf of GMP, executed written contracts with investors.

14.     For example, in October 2012 and July 2014, James provided at least two investors a written agreement to invest in his Company (the "Agreements," attached as Exhibit A).

15.     After executing the Agreements, investors completed the process by sending them to James at his Nashville, Tennessee address.

16.     Pursuant to the Agreements, James conveyed interests in GMP's assets to the investors and promised investors a portion of the gross revenues derived from GMP's projects.

17.     In the Agreements, James referred to the investors as "executive producers." However, the investors had no role in GMP's business.

18.     Other investors invested in GMP based solely on James' oral representations.

19.     James promised the investors significant profits and a return of their principal within a short period of time based on his efforts in producing concerts and other entertainment events.

20.     James raised at least $109,900 from at least four investors in GMP.

21.     The GMP offering was not registered with the Commission, and no exemption from registration applies.

**B.     James' Misrepresentations and Omissions to Investors**

22.     James lured investors through a series of misrepresentations and omissions, including false representations about how James would spend investor funds and false claims of large investment returns and the return of investors' principal.

**1.     False Representations About The Use of Investor Funds**

23.     To lure investors, James told potential investors that GMP would use investor money to fund concerts, programs, and other productions that would generate profits for GMP through live-streaming and pay-per-view systems.

24.     For example, in 2013, James solicited a male resident of Portland, Oregon (the "Oregon Investor") at least three times by telephone.  During these calls, James told the Oregon Investor that GMP would use investor money to reserve musicians and fund the production of an October 2013 rock concert in New Orleans, Louisiana featuring five rock bands, including Nine Inch Nails.

25.     James told the Oregon Investor that GMP would stream the concert world-wide, generating profits for investors.

26.     On October 11, 2013, the Oregon Investor invested $23,000 in GMP via wire transfer.

27.     Similarly, in 2013, James told a potential investor who resided in Arizona (the "Arizona Investor") that he was seeking to raise $1.5 million from investors to fund the production of multiple rock concerts, including the October 2013 rock concert in New Orleans.

28.     James told the Arizona investor he would use investor funds to pay for musicians, including Shakira, Kenny Chesney, and Rhianna. In exchange for the investment, James offered interests in GMP which would enable investors to share in concert revenues.

29.     In December 2013, the Arizona Investor invested a total of $8,000 via two wire transfers.

30.     James' representations to investors were false. Instead of using investor proceeds to produce concerts and pay musicians, James spent a portion of investors' funds for his personal living expenses, including payments to his ex-wife, housing and car payments, and numerous personal meal purchases – all wholly unrelated to GMP's business.

## 2.     False Claims of Large Investment Returns and The Return of Investment Principal

31.     James told potential investors that GMP would provide significant investment returns and that investors would receive their investment principal back within a period of months.

32.     For example, during the first half of July 2014, James met with a Miami-Dade County, Florida firefighter (the "Firefighter") in Hallandale Beach, Florida.

33.     During this meeting, James told the Firefighter that investing in GMP would result in "double" or even "triple" investment returns in a matter of months.

34.     On July 14, 2014, the Firefighter invested all the money he had available at that time, totaling $53,900, in GMP.

35.     Similarly, in 2012, James told a male resident of the state of Tennessee (the "Tennessee Resident") that GMP was "the investment of a lifetime" and would produce outstanding returns on an investment.

36.     James told the Tennessee Resident that he already had contracts with many big hotel chains to stream entertainment and concerts from GMP, and the anticipated profits for investors would be beyond his "wildest dreams."

37.     James told the Tennessee Resident that he would receive his investment principal back from GMP by the end of 2013.

38.     Based on James' representations the Tennessee Resident invested $25,000 in GMP by transferring $20,000 through a wire transfer on October 30, 2012 and investing an additional $5,000 in cash.

39.     James' representations to investors about investment returns were false.  When James made these representations to investors, he knew there was no reasonable basis for making them.  James did not invest the investors' money in the GMP business; instead, he used investors' money to pay for his own personal expenses.

40.     James did not return the GMP investors' principal.  Nor did James pay any GMP investor any return on the GMP investments.

## COUNT I

### Sale of Unregistered Securities in Violation of
### Sections 5(a) and (c) of the Securities Act

41.     The Commission repeats and realleges paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions issued by GMP described in this

Complaint and no exemption from registration existed with respect to these securities and transactions.

43. From no later than October 2012 until at least July 2014, James directly or indirectly:

    (a)    made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise;

    (b)    carried securities or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c)    made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

44. By reason of the foregoing, James violated, and, unless enjoined, is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

**Fraud in the Offer or Sale of Securities in Violation of
Section 17(a)(1) of the Securities Act**

45. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

46. From no later than October 2012 until at least July 2014, James, directly or indirectly, by use of the means or instrumentalities of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

47.     By reason of the foregoing, James directly or indirectly violated, and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(a)(2) of the Securities Act

48.     The Commission repeats and realleges paragraphs 1 through 40 of this Complaint.

49.     From no later than October 2012 until at least July 2014, James, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or of the mails have negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

50.     By reason of the foregoing, James, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT IV

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(a)(3) of the Securities Act

51.     The Commission repeats and realleges paragraphs 1 through 40 of this Complaint.

52.     From no later than October 2012 until at least July 2014, James, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or of the mails negligently engaged in transactions,

practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

53.     By reason of the foregoing, James, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT V

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

54.     The Commission repeats and realleges paragraphs 1 through 40 of its Complaint.

55.     From no later than October 2012 until at least July 2014, James, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly have employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

56.     By reason of the foregoing, James, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT VI

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

57.     The Commission realleges and incorporates paragraphs 1 through 40 of this Complaint.

58.     From no later than October 2012 until at least July 2014, James, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts in order to make the statements made, in the light of the circumstances in which they were made, not misleading.

59.     By reason of the foregoing, James, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT VII

### Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

60.     The Commission repeats and realleges paragraphs 1 through 40 of this Complaint.

61.     From no later than October 2012 until at least July 2014, James, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating, and will operate as a fraud upon the purchasers of such securities.

62.     By reason of the foregoing, James, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining James from directly or indirectly violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## II.

## Disgorgement

Issue an Order directing James to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## III.

## Penalties

Issue an Order directing James to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## IV.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## V.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  October 26, 2017                          Respectfully submitted,


                                     By:      s/ Amie Riggle Berlin
                                              Amie Riggle Berlin
                                              Senior Trial Counsel
                                              Florida Bar No. 630020
                                              Direct Dial:  (305) 982-6322
                                              E-mail:  berlina@sec.gov

                                              Attorney for Plaintiff
                                              **SECURITIES AND EXCHANGE**
                                              **COMMISSION**
                                              801 Brickell Avenue, Suite 1800
                                              Miami, Florida  33131
                                              Telephone: (305) 982-6300
                                              Facsimile:  (305) 536-4154

Of Counsel:
Terence M. Tennant
Fla. Bar No. 0739881
Senior Counsel
Division of Enforcement
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131